*1037 OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
The court-appointed guardian of the person and property of M.L. (hereinafter the IP), Matthew S., moves for leave to expand his powers to gift, nunc pro tunc, to the date of the order to show cause, a percentage of available assets in accordance with the IP’s testamentary intentions, make a loan, nunc pro tunc, to the date of the order to show cause, of a percentage of the IP’s available assets to the guardian and initiate Medicaid planning. The motion is granted in part.
A hearing was held before this court on May 21, 2009 at which the guardian testified and was subject to cross-examination by the court-appointed court examiner, Francis Apicella, Esq.
Matthew S., the grandnephew of the IP, was appointed to serve as the guardian of the IP’s person and property by order and judgment dated December 18, 2008. The IP is 87 years old and currently resides at Hebrew Home for the Aged Nursing Facility. The IP requires long-term care in a nursing home facility, indefinitely. According to the guardian, the IP is presently medically eligible for nursing home Medicaid benefits. He seeks this court’s authorization to transfer the IP’s assets to make her financially eligible for Medicaid benefits before she is forced to deplete her assets. (Matthew S. affidavit ¶ 3.)
According to the petition, the IP’s assets, inclusive of bank accounts, certificates of deposit, brokerage accounts and bonds, total $366,649. The IP’s fixed monthly income consists of $250 per month in Social Security retirement benefits. She currently pays $672 per day for a private room or a total of approximately $20,160 per month to Hebrew Home for her care. The guardian’s intent is to reduce the IP’s assets to less than $13,800 so that the IP will be eligible for Medicaid to pay for her nursing home care.
Matthew S. testified that his family’s intentions have always been to pass assets along to the next generation. He stated that the IP executed a last will and testament naming his mother, the IP’s niece, Vivian S. as her beneficiary. A copy of the IP’s last will and testament is annexed to the petition as exhibit 3. Matthew S. seeks to gift a portion of the IP’s assets in accordance with the distribution terms of her last will and testament. Specifically, in accordance with Medicaid planning, the guardian, through his attorney, seeks to apply the IP’s Social Security income to pay her monthly nursing home bill and to *1038 set aside a burial fund for her. The guardian will then gift a portion of the IP’s assets to Vivian S. which, according to the guardian’s attorney, will result in a penalty period in which the IP will be ineligible for Medicaid nursing home benefits.
Another percentage of the IP’s assets will be loaned to the guardian and the guardian stated in his affidavit that he understands that he will be bound by a promissory note to use the remaining portion to pay through a penalty period created by the gift. This will allow the IP to access the Medicaid program to pay for her medical needs before she is forced to spend down all of her assets. (Matthew S. affidavit ¶ 14.) In addition, the guardian asserts that under the terms of the loan, he will be responsible for paying the nursing home a monthly private pay rate with a combination of loan monies and income. (Matthew S. affidavit ¶ 15.)
According to the guardian’s attorney, this combination will fall just under the private pay rate of the nursing home. Medicaid will then determine that the IP is “otherwise eligible” on the pick up date if her total payments, loan and income, do not exceed the private pay rate of the nursing home. If her total payments, loan and income, do exceed the private pay rate, she will not be considered “otherwise eligible” for Medicaid and the penalty period will not begin to run. Therefore, a small monthly shortfall will accumulate through the penalty period and the shortfall will be settled at the end of the penalty period with the IP’s allowable resources of $13,800. (Danetti affirmation ¶ 9.)
If this court approves the plan outlined by the guardian’s attorney, then the month after making the gift to Vivian S. and establishing the promissory note and loan, the IP will be “otherwise eligible” for Medicaid nursing home benefits. The guardian stated to this court that the proposed transfer to his mother, Vivian S., will enable his mother to have the necessary assets to pay for the IP’s personal needs such as a television set, adult diapers and other personal items the IP may require. Currently, the guardian’s mother is paying for the IP’s personal needs out of her own pocket. The guardian further stated that once the transfer is made to Vivian S., he will make sure that the funds are used for the IP’s personal needs. If the transfer is not permitted, then the guardian and his attorney estimate that the IP’s funds will be depleted within two years, thereby leaving no source of funds to purchase necessities and personal items for the IP In addition, the guardian stated that it would be the IP’s desire to have her assets devised to her niece in accordance with the intentions of her last will and testament.
*1039 The court examiner expressed concern over the fact that once the transfer of assets is made to the IP’s niece, Vivian S., there will be no way to guarantee that the money will be used for the IP’s personal needs. He elicited testimony from the guardian with respect to whether or not the IP has ever made a transfer of her assets in the past and the guardian stated that she once made a gift of $10,000 to each of his children and his brother’s children. The court examiner was of the opinion that it would be more prudent to place the IP’s funds in a trust, though he acknowledged that because the IP is over the age of 65, the guardian cannot establish a supplemental needs trust for her benefit.
The guardian’s attorney cited to several cases in her affirmation wherein courts have granted the authority to undertake Medicaid planning. Indeed, this court has permitted guardians to conduct Medicaid planning numerous times in the past and this court finds that Medicaid planning is proper under certain circumstances. However, this court is concerned with the plan outlined by the guardian and his attorney herein because there is no way to ensure that the IP will be left with any assets for her personal use.
Mental Hygiene Law § 81.21 (a) (1) expressly states that a guardian of the property has the power to make gifts. Mental Hygiene Law § 81.21 (b) states,
“If the petitioner or the guardian seeks the authority to exercise a power which involves the transfer of a part of the incapacitated person’s assets to or for the benefit of another person . . . the petition shall include the following information:
“1. whether any prior proceeding has at any time been commenced by any person seeking such power with respect to the property of the incapacitated person . . .
“2. the amount and nature of the financial obligations of the incapacitated person including funds presently and prospectively required to provide for the incapacitated person’s own maintenance, support, and well-being and to provide for other persons dependent upon the incapacitated person for support ...
“3. the property of the incapacitated person that is the subject of the present application;
“4. the proposed disposition of such property and *1040 the reasons why such disposition should be made;
“5. whether the incapacitated person has sufficient capacity to make the proposed disposition . . .
“6. whether the incapacitated person has previously executed a will or similar instrument and if so, the terms of the most recently executed will . . .
“7. a description of any significant gifts or patterns of gifts made by the incapacitated person;
“8. the names, post-office addresses and relationships of the presumptive distributees of the incapacitated person.”
In the case at bar, the guardian provided this court with a list of the IP’s assets and his reasons for wanting to effectuate the transfer of the IP’s assets, to wit, Medicaid planning and preserving the IP’s assets to use for her personal needs. The IP executed a will naming her niece, Vivian S., as her beneficiary and the guardian seeks to effectuate the transfer to Vivian S.
Mental Hygiene Law § 81.21 (d) states that in determining whether or not to approve the application, the court shall consider,
“1. whether the incapacitated person has sufficient capacity to make the proposed disposition himself or herself. . .
“2. whether the disability ... is likely to be of sufficiently short duration such that he or she should make the determination with respect to the proposed disposition when no longer disabled;
“3. whether the needs of the incapacitated person and his or her dependents or other persons depending upon the incapacitated person for support can be met from the remainder of the assets of the incapacitated person after the transfer is made;
“4. whether the donees or beneficiaries of the proposed disposition are the natural objects of the bounty of the incapacitated person and whether the proposed disposition is consistent with any known testamentary plan or pattern of gifts he or she has made;
“5. whether the proposed disposition will produce estate, gift, income or other tax savings which will significantly benefit the incapacitated person or his or her dependents . . .
“6. such other factors as the court deems relevant.”
This court is most concerned with paragraph (3).
*1041 The guardian asserts that the transfer will benefit the IP in that the money that is transferred to his mother, Vivian S., will be used for the IP’s personal needs. However, since Vivian S. has no legal obligation to use the funds that are transferred for the IP’s benefit, this court finds that the needs of the IP may not be met once the transfer is made. An assurance from the guardian that the funds will be used for the IP’s needs does not satisfy this court’s concerns that once the transfer of her assets is made, the IP will have sufficient monies left and available to her for her own personal needs. The guardian would be legally obligated to use the IP’s funds for her needs but his mother, Vivian S., has no legal obligation to do so. This court does not doubt that if the IP was competent, she would prefer that her assets be left to the beneficiary of her will. However, it is not clear that she would make such a transfer if it would possibly leave her no funds for her own personal needs.
As a result of this court’s concerns, the guardian’s attorney proposed setting up a trust for the benefit of the IP once the transfer of assets is made to Vivian S. This court finds that the establishment of a trust for the benefit of the IP would be a proper way to conduct Medicaid planning and would preserve the IP’s assets for her future personal needs. Therefore, the guardian’s application for permission to gift the IP’s assets to Vivian S. in order to conduct Medicaid planning is granted to the extent that the guardian shall set up a trust for the benefit of the IP with the banking institution serving as the cotrustee of the trust.
The guardian shall provide this court with a copy of the proposed trust instrument for this court’s approval prior to making the transfer of the IP’s assets to Vivian S.